67 U.S. 485 (____)
2 Black 485
MISSISSIPPI AND MISSOURI RAILROAD COMPANY
v.
WARD.
Supreme Court of United States.

*491 Mr. Cook, of Illinois, and Mr. Reverdy Johnson, of Maryland, for Appellants.
Mr. Lincoln, of Ohio, for Appellee.
Mr. Justice CATRON.
James Ward charges the Mississippi and Missouri Railroad Company with having created a nuisance by erecting a bridge across the Mississippi river at Rock Island, and prays that the nuisance may be abated.
The respondent resists the relief prayed, on the ground, among others, that the complainant does not stand in a position to maintain this suit.
Ward was part owner of three steamboats  and commander of one of them  navigating the river in successive trips between St. Louis and St. Paul; and which boats, the complainant alleges, were much injured and delayed by the bridge, which he avers is a great obstruction to navigation  amounting to a prominent nuisance. It is insisted that Ward cannot sue alone, and could only come before the Court jointly with the other part owners *492 of the vessels injured and delayed. He seeks no damages by his bill, but only an abatement of the nuisance, as a preventive remedy against future injury and delay.
A bill in equity to abate a public nuisance, filed by one who has sustained special damages, has succeeded to the former mode in England of an information in Chancery, prosecuted on behalf of the Crown, to abate or enjoin the nuisance as a preventive remedy. The private party sues rather as a public prosecutor than on his own account; and unless he shows that he has sustained, and is still sustaining, individual damage, he cannot be heard. He seeks redress of a continuing trespass and wrong against himself, and acts in behalf of all others, who are or may be injured; nor is there more necessity for joining with his partners in the prosecution than there is for his joining in the suit any other person, as complainant, who has sustained injury. Gibbons on Dilapidation, 402. The character of the nuisance and the sufficiency of the damage sustained is to be judged by the Courts. Iverson vs. Moore, (Ld. Ray, 486; 1 Salk., 15); Gibbons on Dilapidation, 403. But the want of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern.
It is next objected that there are not proper defendants brought before the Court. The Chicago and Rock Island Railroad Company, who own the bridge on the Illinois side of the river, and the Bridge Company who built it, and also A.C. Flagg, who holds a mortgage on the bridge as trustee for others who advanced money to aid in its erection, are not made parties to the suit. The Chicago and Rock Island Railroad Company, and the Bridge Company, are incorporated, and located in the State of Illinois, and Flagg resides in the State of New York. The alleged nuisance is situate in Iowa, and being local, the suit could only be brought in that State; and, therefore, the Court had no power to bring these parties in interest before it.
If the Iowa corporation could have been individually indicted for creating the nuisance, no reason exists why it should not be *493 individually prosecuted in Chancery for its abatement. But the facts present a much more serious objection to the complainant's right to sue than either of those above stated. The Constitution of Illinois calls for the middle of the Mississippi river as the western boundary of that State, and as Iowa was admitted into the Union after Illinois, a line in the middle of the river is the dividing line between the States.
The complainant sued in the Federal Court because of his citizenship in a different State from the defendant; and the United States District Court holden in Iowa exercised the same jurisdiction that a State Court of Iowa could have exercised, and no more. It had no power beyond the middle of the river. On that part of the bridge within Iowa, and its piers, the Court below acted, and ordered that the structure should be removed.
In considering the merits and the other question as respects the complainant's right to sue, some additional facts need be stated.
This bridge is one thousand five hundred and seventy feet long, and the number of piers is six. Three of them are on the Iowa side of the river. The draw pier is the fourth; it is three hundred and eighty-six feet long at its bottom, and forty-five feet wide. The draw space on the Iowa side is one hundred and eleven feet, and on the Illinois side one hundred and sixteen feet wide in the clear. The distance from centre to centre of the small piers is two hundred and fifty-seven feet. The long pier stands at an angle with the thread of the current of about twenty-four degrees, and the small piers are nearly on a line with the thread of the current. The Illinois draw passage is directly over the deepest channel of the river, and directly over the usual track of steamboats before the bridge was built. The Mississippi is about one thousand four hundred and ten feet wide at the bridge, and the middle of the river is about eighty feet westwardly of the long pier.
The Illinois draw passage (one hundred and sixteen feet), the width of the long pier (forty-five feet), and the eighty feet between it and the eastern line of Iowa cover a space of two hundred and forty feet of water-way, and which embraces the main channel, *494 where steamboats have at all times navigated. It was at the long pier, and in the Illinois draw east of that pier, that the complainant's boats sustained the injuries on which he found his right to sue the Iowa corporation, and to proceed against the bridge in rem as a public nuisance.
An indictment could only have been prosecuted against the owner for keeping up the nuisance in Illinois in the Courts of that State, because the nuisance was a trespass and crime against the laws of Illinois, and the injuries to the complainant's boats giving him the privilege to sue and abate the obstruction was as local as the public right to indict. He asks nothing from the person of the defendant, but seeks to remove a local object, because he has sustained special damage from that object.
The District Court had no power over the local object inflicting the injury; nor any jurisdiction to inquire of the facts, whether damage had been sustained, or how much. These facts are beyond the Court's jurisdiction and powers of inquiry, and outside of the case.
The District Court ordered three spans of the bridge and three of its piers to be removed, extending to middle of the river: And what would be the consequence if we were to affirm that decree? It would, as a consequence, render the bridge useless throughout, but it would not materially remedy the nuisance complained of. The navigation would certainly not be improved so far as the complainant is concerned by removing the Iowa end of the bridge. The cross currents alleged to exist would remain; the large eddy at the lower end of the long pier, and the obstruction to the Iowa draw-passage by the eddy, would still remain.
In the next place: Is the bridge west of the Illinois boundary an unreasonable obstruction, and therefore a nuisance, that a Court of Chancery can lawfully remove? In considering this question we must be governed by the same rule on which a Court of law could proceed in case of an indictment against the Bridge Company for committing the nuisance; and the rule is that if the abrigdment of the right of passage occasioned by the erection was for a public purpose and produced a public benefit, *495 and if the erection was in a reasonable situation, and a reasonable space was left for the passage of vessels on the river, then it is not an unreasonable obstruction and indictable. Rex vs. Russell, (6 Barn. & Cresw., 566; 13 How., 623; 15 Wendell, 133.)
Then, again, the obstruction to navigation must be plainly a nuisance within this rule before it can be removed by decree. If the proceeding was by indictment, and the jury doubted whether the obstruction was a nuisance or not, they would be instructed to acquit the defendant; and so, if this case was referred to a jury to try the fact, and they doubted, they would be bound to acquit. And the same rule applies in a Court of Chancery where the Court ascertains the fact of nuisance. 2 Story's Com. on Eq., 203, 204.
To say the least in this case, it is certainly very doubtful whether the bridge on the Iowa side is a serious obstruction, amounting to a nuisance.
The smaller piers on that side are parallel with the current passing through them, and do not occasion much impediment of navigation to boats without chimneys, nor to rafts.
The main channel where steamboats uniformly pass before the bridge was built, and must now pass, is eastwardly of the middle of the river, and on the Illinois side. On this state of the facts, it must be admitted that it is hardly possible to deal with the whole obstruction of any bridge across the Mississippi river, it being a boundary between States almost throughout its whole length. And it is difficult to decree in any case of material obstruction, unless the whole nuisance is in the power of the Court. The case before us presents the difficulty very prominently. The plaintiff's case mainly rests on the fact that the draw pier is at an angle to the current, and it is assumed that if this pier was re-constructed parallel with the current, and the draw on the Illinois side was widened the obstruction would be removed to a degree making it short of a nuisance. Now this is a question that we cannot examine, nor reach by a decree, as the relief suggested is clearly beyond our power in this suit Congress could extend the jurisdiction of the Federal Courts across the Mississippi river by enlarging the judicial districts on *496 either side; or it could confer concurrent jurisdiction on adjoining districts, extending to trespasses and torts committed within the shores of the river. But the Courts of justice cannot do it unless authorized by an Act of Congress.
It is also insisted with great earnestness that the public is entitled to the free navigation of the whole river from bank to bank, and as the western half of the river is undeniably within the jurisdiction of Iowa, it follows that the bridge is a clear nuisance within that district to the extent of half its length. According to this assumption no lawful bridge could be built across the Mississippi anywhere; nor could the great facilities to commerce, accomplished by the invention of railroads, be made available where great rivers had to be crossed.
It is ordered that the bill be dismissed and that the costs be divided  each party paying its own.
Mr. Justice NELSON, dissenting.
I am unable to agree to the opinion of the majority of the Court in this case. The main issue presented on the pleadings and proofs involves the question, whether or not, the free navigation of the Mississippi river is obstructed by the erection of the bridge in question across its bed.
The bridge spans the entire stream. As I understood the opinion, it neither denies nor admits the obstruction, but places the decision upon the ground, that the jurisdiction of the Court is incompetent to reach or deal with the question.
The east line of the boundary of the State of Iowa and which constitutes the boundary of the District of the Federal Court, and of course of its jurisdiction, is the middle of the Mississippi river: and the same line constitutes the west boundary of the State of Illinois, and of course the limit of the jurisdiction of the Federal Court in that State. One moiety, therefore, of the bed of this river is embraced within the local jurisdiction of this Court for the District of Iowa and the other moiety within the jurisdiction of the Court for the District of Illinois. Neither Court possess any local jurisdiction over the entire river, and hence the idea that neither Court is competent or equal to deal with the obstruction; *497 and especially that the Court in the Iowa District cannot deal with it on the Illinois side; and for the same reason the Court in the Illinois District could not, if the suit was in that Court, deal with it on the Iowa side.
Now one plain answer to this course of argument seems to me is, that the obstruction complained of is an obstruction of the moiety of the river on the Iowa side, and within the admitted jurisdiction of the Court. There can, therefore, be no want of power in the Court to deal with this part of the obstruction. Indeed, it is the only Federal Court that can deal with it.
I have not been able to discover any answer to this view, as it respects the jurisdiction of the Court, or its duty to exercise it. It is admitted, that this moiety of the river has been wholly obstructed so far as the free navigation of the same is concerned  a total obstruction by the erection of the bridge.
I am aware, it is said, or intimated, that the main navigable channel of the river is on the Illinois side; and hence the removal of the obstruction on the Iowa side, could not remedy the wrong complained of. But is this an answer? It may be admitted, that the channel on the Illinois side affords the best navigable channel at all seasons of the year, for the passage of boats. But the Iowa side or moiety is also navigable; and, perhaps, for two-thirds of the season quite equal to that on the other side, if not in a superior degree, for the navigation of many of the boats and water-craft employed on this river. Even in the season of low water the depth of the water on the Iowa side ranges from six to ten feet at or near the bridge, as shown by the surveys of the Government Engineers.
But I do not place my dissent to the opinion of the Court wholly, nor even mainly, on the ground above stated, but upon much higher and broader ground.
The right to a free and unobstructed navigation of this river on the part of the public, and especially of the citizens of the United States, depends upon the Constitution and the Laws of the United States  the public law of the country.
The local laws of the States have no control over it. I speak now of the free and unobstructed navigation of the river, and *498 according to this general or public law, the right of navigation exists over every part of it. No principle is better settled or more generally admitted. The reason given is well stated by Lord Denman, in Williams vs. Wilcox, (8 Ad. & Ell., 314), and perhaps no river or navigable stream affords a better illustration of the soundness of the principle, or of the reasons upon which it is founded, than the river in question. The reasons are, "that the nature of the highway which a navigable river affords,  liable to be affected by natural and uncontrollable causes, presenting inconveniences in different parts and in different sides, according to changes of wind or direction of the vessel, and attended by the important circumstance, that, upon no one is any duty imposed by the common law to do that which would be analogous to the ordinary repair of a common highway to remove obstructions, namely, clear away sand banks and preserve any accustomed channel,  all these considerations," he observes, "make it an almost irresistible conclusion that the paramount right, if it existed at all, must have been a right in every part of the space between the banks."
Now, this principle, if acknowledged and applied in this case, affords not only ground for the exercise of the jurisdiction of the Court, but makes it a duty to inquire into the question of obstruction, and deal with it according as the pleadings and proofs may require or justify.
I agree that this principle has been modified by the judgment of this Court in the case of the Wheeling Bridge, in its endeavor to harmonize this public right of navigation with the subordinate right of the States to erect bridges over these navigable waters.
The Court there determined that in the erection of a bridge under State authority, if there still existed a free and unobstructed navigation of the river, the bridge would not be considered a nuisance, but upheld as lawful.
The bridge in question is entitled to the benefit of this modification of the principle. And I agree that if there is a free and unobstructed navigation of this river on the Illinois side, it would afford an answer to the admitted obstruction on the side in Iowa. But this is the only answer that can be given, and it *499 is apparent that this answer raises the question whether or not such a channel was left open, a question which the Court must hear and determine, and without hearing and determining which in favor of the defendants, the decree must pass against them.
It seems to me, therefore, without pursuing the case further that the material question in the case before the Court below was whether, notwithstanding the erection of the bridge, a free and unobstructed navigation for the passage of boats existed on the Illinois side of the river; and hence, necessarily, whether or not the bridge constituted an obstruction over that channel. If it did not, then the case fell within the qualification of the principle as applied in the Wheeling Bridge case. If it did, then clearly no defence was shewn to the admitted obstruction of that part of the river on the Iowa side.
I express no opinion upon the question of fact, the obstruction, as that question is not reached according to the decision of a majority of the Court.
I am requested to state that Mr. Justice Wayne and Clifford concur in this opinion.